UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARKLE INTERESTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action Case No._____ |
| | ) | |
| UNITED STATES FISH AND WILDLIFE | ) | |
| SERVICE, DANIEL M.  ASHE, Director of | ) | |
| United States Fish and Wildlife Service, in his | ) | |
| official capacity; UNITED STATES | ) | |
| DEPARTMENT OF INTERIOR; and, | ) | |
| KENNETH SALAZAR, Secretary of the | ) | |
| Department of Interior, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     This is an action for declaratory judgment and injunctive relief against Defendants for violating federal statutes and the U.S. Constitution.  By final rule, dated June 12, 2012, 77 Fed. Reg. 35118, *et seq.*, Defendants, through the U.S. Fish and Wildlife Service, designated critical habitat for the dusky gopher frog (previously Mississippi Gopher Frog) in violation of the Endangered Species Act (ESA), 16 U.S.C. § 1531, *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 551, *et seq.*, in that the designation erroneously includes large areas of private land that do not contain the physical and biological features essential to the conservation of the species and the economic analysis is invalid for failing to properly consider the cumulative effects of the designation.  Moreover, the designation was issued without the environmental review required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, and in excess of constitutional authority under the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3.  Defendants' actions are contrary to law and must be set aside.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction); 16 U.S.C. § 1540(c) and (g) (actions arising under the citizen suit provision of the Endangered Species Act); and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act).

3.      Plaintiff, Markle Interests, LLC (Markle), satisfied the notice requirement of the Endangered Species Act citizen suit provision, 16 U.S.C. § 1540(g)(2).  More than 60 days ago, by letter dated September 27, 2012, Markle provided Defendants written notice of the violations that are the subject of this complaint in accordance with 16 U.S.C. § 1540(g)(2)(C).  The notice is attached as Exhibit 1 and is incorporated herein by reference.  Defendants have not responded to this notice or taken any action to withdraw the final rule at issue here, or to otherwise remedy their violations of law.

4.      An actual, justiciable controversy now exists between Markle and Defendants. Relief is proper under 28 U.S.C. § 2201 (authorizing declaratory relief) and § 2202 (authorizing injunctive relief).

5.      The federal government has waived sovereign immunity in this action under 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

6.      Markle has exhausted all administrative remedies.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(e) in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

### Plaintiff

8.      Markle Interests, LLC, is a limited liability company that owns an undivided interest in forested property identified in the final rule as Unit 1 in St. Tammany Parish, Louisiana, and included as critical habitat for the dusky gopher frog.  This designation imposes significant regulatory burdens on the property such that costly federal approval may be required for any activity deemed to affect the species, including adverse habitat modification.  In addition to these regulatory burdens, the destination of Unit 1 as critical habitat results in a drastic reduction in value and limits the usability and saleability of the property.

### Defendants

9.      Defendant United States Department of Interior (Department) is an agency of the United States.  Congress has charged the Department with administering the Endangered Species Act for certain species, including the dusky gopher frog.

10.     Defendant Kenneth Salazar is Secretary of the United States Department of Interior (Secretary).  He oversees the Department's administration of the Endangered Species Act and is sued in his official capacity.

11.     Defendant United States Fish and Wildlife Service (Service) is an agency of the United States Department of Interior.  The Service has been delegated responsibility by the Secretary for day-to-day administration of the Endangered Species Act, including the designation of critical habitat.

12.     Defendant Daniel M. Ashe is Director of the United States Fish and Wildlife Service.  He oversees the Service's administration of the Endangered Species Act and is sued in his official capacity.

13.     All of these Defendants are responsible for the violations alleged in this complaint.

## LEGAL FRAMEWORK

### Listing of Threatened or Endangered Species

14.     Under Section 4 of the Endangered Species Act, Defendants must list a species as "threatened" or "endangered" based on certain factors relating to habitat, overutilization, disease or predation, existing regulatory mechanisms, or other factors.   *See* 16 U.S.C. § 1532(20).

15.     An "endangered" species is one "which is in danger of extinction throughout all or a significant portion of its range."   16 U.S.C. § 1532(6).   A "threatened" species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."   16 U.S.C. § 1532(20).

16.     Endangered species are specifically protected by Section 9 of the Endangered Species Act, which, among other things, makes it unlawful for any person to "take" such species.   *See* 16 U.S.C. § 1538(a)(1)(B).   The term "take" means to "harass, harm, hunt, pursue, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct," and may include habitat modification.   16 U.S.C. § 1532(19)

### Critical Habitat Designation

17.     Under Section 4 of the Endangered Species Act, when a species is listed as threatened or endangered, Defendants must designate critical habitat for that species "to the maximum extent prudent and determinable."   16 U.S.C. § 1533(a)(3)(A).

18.     Critical habitat is defined as:

(i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 4 of this Act [15 USCS § 1533], on which are

5

found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

(ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 4 of this Act [15 USCS § 1533], upon a determination by the Secretary that such areas are essential for the conservation of the species.

. . . .

(C) Except in those circumstances determined by the Secretary, critical habitat shall not include the entire geographical area which can be occupied by the threatened or endangered species.

16 U.S.C. § 1532(5)(A)-(C).

19.     "The statute thus differentiates between 'occupied' and 'unoccupied' areas, imposing a more onerous procedure on the designation of unoccupied areas by requiring the Secretary to make a showing that unoccupied areas are essential for the conservation of the species." *Ariz. Cattle Grower's Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010).

20.     The term "conservation" means the use of all methods and procedures necessary to bring a threatened or endangered species to "the point" at which the protections of the Act are no longer required.  16 U.S.C. § 1532(3).

21.     The Secretary must

[d]esignate critical habitat . . . on the basis of the best scientific data available and after taking into consideration the economic impact . . . and any other relevant impact, of specifying any particular area as critical habitat.  The Secretary may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned.

16 U.S.C. § 1533(b)(2).

## Consultation

22.     Private property designated as critical habitat is subject to federal regulation.

23.     In consultation with the Secretary, federal agencies are required to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2).

24.     Section 7 of the Endangered Species Act also requires a federal agency to consult with the Secretary at the request of a permit applicant, if the applicant "has reason to believe that an endangered species or a threatened species may be present in the area affected by his project and that implementation of such action will likely affect such species." 16 U.S.C. § 1536(a)(3).

25.     Under Section 7, the Secretary must provide the consulting federal agency and applicant with a Biological Opinion summarizing the basis for the opinion and detailing how the project will impact a species or its critical habitat. *See* 16 U.S.C. § 1536(b)(3)(A). If it is determined that the project is likely to jeopardize the species' "continued existence" or "result in the destruction or adverse modification of critical habitat" of such species, the opinion must suggest "reasonable and prudent alternatives" that may be taken by the consulting agency or applicant to avoid such impacts. *Id.*

26.     If it is determined that the "taking of an endangered species or a threatened species incidental to the agency action will not" jeopardize the species' continued existence or result in the destruction or adverse modification of critical habitat of such species, a written "incidental take statement" must be issued that (1) specifies the impact of such incidental taking on the species; (2) specifies those reasonable and prudent measures that are necessary or appropriate to minimize such impact; and (3), sets forth the terms and conditions with which the

agency or applicant must comply to implement the specified measures. 16 U.S.C. § 1536(b)(4)(B)(i), (ii) and (iv).

## National Environmental Policy Act

27.     The National Environmental Policy Act requires federal agencies to examine the environmental effects of proposed federal actions and to inform the public of the environmental concerns that went into the agency's decision making. Among other things, NEPA requires "to the fullest extent possible" all agencies of the federal government to prepare "environmental impact statements" for any "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

28.     An environmental impact statement must include:

> (i)     The environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

*Id.*

29.     The NEPA implementing regulations provide federal agencies with the opportunity to prepare an "environmental assessment" that either determines that an environmental impact statement is required or concludes with a "finding of no significant impact," which terminates the agency's NEPA obligations. 40 C.F.R. § 1508.9.

## Administrative Procedure Act

30.     Pursuant to the Administrative Procedure Act, a court must set aside agency action that (a) fails to meet statutory, procedural, or constitutional requirements, or (b) is

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A)-(D).

31.    Section 704 of the Administrative Procedure Act states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

### U. S. Constitution

32.    Commerce Clause enactments, like the Endangered Species Act, are subject to the limits of that power. "The Constitution grants Congress the power to '*regulate* commerce.' Art. 1, § 8, cl. 3. (emphasis added). The power to *regulate* commerce presupposes the existence of commercial activity to be regulated." *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566, 2586 (2012).

### FACTUAL ALLEGATIONS

### Listing and Critical Habitat Designation

33.    On December 4, 2001, the U.S. Fish and Wildlife Service listed the dusky gopher frog (known then as the Mississippi gopher frog) as an endangered species. *See* 66 Fed. Reg. 62993, *et seq*.

34.    On June 12, 2012, the Service designated critical habitat for the dusky gopher frog. *See* 77 Fed. Reg. 35118, *et seq.*

35.    Although critical habitat may only include those areas "essential to the conservation of the species," the Service made no finding as to the quantity or location of habitat necessary to conserve the gopher frog or identify "the point" at which the protections of the ESA are no longer required.

36.     The critical habitat designation covers 6,477 acres in two states, including 1,544 acres of forested land in St. Tammany Parish, Louisiana, known as Unit 1.  *Id.* at 35118.

37.     Unit 1 is private land in which the Plaintiff, Markle, owns an undivided interest. *Id.* at 35134-35135.

38.     Unit 1 is not currently occupied by the gopher frog nor was it occupied at the time of the listing in 2001.  *Id.* at 35134-35135.

39.     Unit 1 is not suitable for gopher frog habitat as it does not currently contain the physical or biological features essential to the conservation of the species.  *Id.* at 35135.

40.     Unit 1 cannot be made suitable for gopher frog habitat without human intervention, including a change in land use, controlled burns to modify the vegetation, and the transplanting of species to the site.  *Id.* at 35129-35130.

41.     Unit 1 landowners submitted comments to the Service opposing the designation and expressing their resolve not to manage Unit 1 for gopher frog habitat.  *Id.* at 35123.

42.     The Service acknowledged that it cannot mandate that Unit 1 be managed to make the area suitable for gopher frog habitat.  *Id.* at 35126.

43.     The Service did not show how Unit 1—which is unoccupied and unsuitable as habitat for the gopher frog—is essential to the conservation of the species.

**Economic Impacts Analysis**

44.     In conjunction with the critical habitat designation, the Service completed an economic impacts analysis mandated by Section 4 of the Endangered Species Act.  *See id.* at 35140-35141.

45.     That analysis showed that designating Unit 1 as critical habitat could have an adverse impact on the landowners as high as $33.9 million.  *See id.* at 35141.

46. On the record, the Service did not conduct a balancing analysis that weighed the economic impact on the landowners of Unit 1 against the benefit of including Unit 1 in the critical habitat designation.

47. Notwithstanding the fact that Unit 1 is unsuitable for gopher frog habitat, the Service concluded that the "economic analysis did not identify any disproportionate costs that are likely to result from the designation." *Id.* at 35141.

48. The Service relied on the "baseline approach" and did not consider the *quantitative* economic impacts of the critical habitat designation coextensively (or cumulatively) with the listing of the gopher frog as an endangered species. *Id.* at 35140-35142.

## NEPA Compliance

49. The government admitted that it did not subject the critical habitat designation for the dusky gopher frog to review under the National Environmental Policy Act. *See id.* at 35144.

## APA Compliance

50. The rule designating critical habitat for the dusky gopher frog, 77 Fed. Reg. 35118, *et seq.*, is the culmination of the Service's decision making and constitutes final agency action.

## Constitutional Compliance

51. The Service made no finding that the designation of Unit 1 as critical habitat constitutes the regulation of existing commercial activity as the Constitution and U.S. Supreme Court precedent require. *See United States v. Lopez*, 514 U.S. 549 (1995).

**INJUNCTIVE RELIEF ALLEGATIONS**

52.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 51 as though fully set forth herein.

53.     If an injunction does not issue enjoining Defendants from enforcing the critical habitat designation for the dusky gopher frog, Markle will be irreparably harmed.

54.      Markle has no plain, speedy, and adequate remedy at law.

55.     If not enjoined by this Court, Defendants will continue to enforce or rely on the critical habitat designations in derogation of Markle's rights.

56.     Accordingly, injunctive relief is appropriate.

**DECLARATORY RELIEF ALLEGATIONS**

57.      Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 as though fully set forth herein.

58.     An actual and substantial controversy exists between Markle and Defendants as to their legal rights and duties with respect to the ESA, NEPA, the APA, and the U.S. Constitution in the designation of critical habitat for the dusky gopher frog.

59.     This case is presently justiciable because Defendants' failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Markle.  Markle has a vital interest in knowing whether the critical habitat designation, to which Markle is subject, is statutorily and constitutionally valid.

60.     Declaratory relief is therefore appropriate to resolve this controversy.

# CLAIMS FOR RELIEF

## First Claim for Relief

### Failure to Make Threshold Determination
### for Designating Critical Habitat
### (Violation of ESA, 16 U.S.C. § 1533(b)(2);
### 50 C.F.R. § 424.12(e); Alternatively, APA, 5 U.S.C. § 706)

61.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     The Endangered Species Act defines critical habitat as those areas "essential to the conservation of the species." 16 U.S.C. § 1532(5). In turn, the Act defines "conservation" to mean the use of all methods and procedures necessary to bring a "threatened" or "endangered" species to "the point" at which the protections of the Act are no longer required. 16 U.S.C. § 1532(3). The Act does not define "essential" but it is axiomatic that to determine what is "essential to the conservation of the species," the Service must first identify "the point" when the species will no longer be "threatened" or "endangered." That point can be identified only if the Service has determined a viable population size and the minimum habitat necessary to sustain that population. However, those threshold determinations are entirely missing from the final rule.

63.     The effect of the Service's failure to determine a viable population and minimum habitat size is that the Service is logically incapable of ascertaining which areas are "essential to the conservation of the species" and whether the designation of any particular unoccupied area is required. *See* 50 C.F.R. § 424.12(e) ("The Secretary shall designate as critical habitat areas outside the geographical area presently occupied by a species only when a designation limited to its present range would be inadequate to ensure the conservation of the species."). In this

13

case, there are no facts found in the rule from which to draw a rational connection as to the size of the critical habitat area. Without the foundational underpinning of a viable population, no one, including the Service, can determine whether the areas designated as critical habitat are too much or too little.

64.     By these acts or omissions, Defendants violated the ESA, 16 U.S.C. § 1533(b)(2); federal regulation, 50 C.F.R. § 424.12(e); and, alternatively, the APA, 5 U.S.C. § 706. The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

### Second Claim for Relief

### Failure to Apply Correct Standard
### to Determine Critical Habitat
### (Violation of ESA, 16 U.S.C. § 1533(b)(2);
### Alternatively, APA, 5 U.S.C. § 706)

65.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 64 as though fully set forth herein.

66.     The Secretary does not have unfettered discretion to designate unoccupied areas as critical habitat. Such areas must be "essential for the conservation of the species." 16 U.S.C. § 1532(5)(ii). Logically, this would include areas that at least contain those physical and biological features that are themselves "essential to the conservation of the species." The Service has identified such features as Primary Constituent Elements (or PCEs). For the dusky gopher frog, there are three: (1) ephemeral wetland habitat; (2) upland forested nonbreeding habitat; and (3) upland connectivity habitat. *See* 77 Fed. Reg. 35131. The Service maintains that all of these PCEs are essential to the conservation of the species. However, the Service admits that Unit 1 does not contain all these PCEs. *See id.* at. 35135. In fact, Unit 1 contains **none** of the PCEs essential to the conservation of the species. Therefore, Unit 1 is currently not suitable habitat for the dusky gopher frog at all, let alone critical habitat.

67. Nevertheless, the Secretary included this unoccupied area in the designation. In effect, the Secretary designated Unit 1 as critical habitat on the premise that the area **would** be essential for the conservation of the species, **if** it ever did contain the requisite PCEs. *See id.* But it doesn't now and likely never will. The private owners have no intent to convert their property to conservation purposes and, according to the Service, they can't be compelled to do so.

68. By these acts or omissions, Defendants violated the ESA, 16 U.S.C. § 1533(b)(2); and, alternatively, the APA, 5 U.S.C. § 706. The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

### Third Claim for Relief

**Inadequate Economic Analysis**
**(Violation of ESA, 16 U.S.C. § 1533(b)(2);**
**Alternatively, APA, 5 U.S.C. § 706)**

69. Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 68 as though fully set forth herein.

70. The Economic Analysis (EA) adopts the "baseline" approach whereby the Service only considers the *qualitative* impacts that occur "without critical habitat," such as those impacts caused by listing of the species, whereas the incremental impacts occurring "with critical habitat" are given a *quantitative* analysis. *See* 77 Fed. Reg. at 35140-35141. The result of this approach is that neither the Service nor the public are ever provided a meaningful cumulative economic impacts analysis. This "baseline" approach was rejected by the Tenth Circuit in *New Mexico Cattle Growers Association v. U.S. Fish and Wildlife Service*, 248 F.3d 1277 (10th Cir. 2001). According to the Tenth Circuit, the "baseline" approach is meaningless and inconsistent with the language of the Act and the intent of Congress. Therefore, that Circuit

held the Economic Analysis must consider all of the impacts of critical habitat designation, including those impacts co-extensive with the listing. In other words, the EA must consider the cumulative impacts of the listing and the critical habitat designation together, not just the incremental impacts of the designation. (For a contrary view see *Arizona Cattle Growers' Association v. Salazar*, 606 F.3d 1160 (9th Cir 2010).) In *Home Builders Association of Northern California v. Norton*, 293 F. Supp. 2d 1 (D.D.C. 2002), the Service appears to have represented to the court that it would follow the *New Mexico Cattle Growers'* co-extensive approach in all future critical habitat designations. But it has not done so here.

71.     Moreover, the EA failed to quantify economic and other impacts of the designation on oil and gas exploration, forestry, and those impacts resulting from conservation activities such as controlled burns.

72.     By these acts or omissions Defendants violated the ESA, 16 U.S.C. § 1533(b)(2); and, alternatively, the APA, 5 U.S.C. § 706. The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

**Fourth Claim for Relief**

**Failure to Exclude**
**(Violation of ESA, 16 U.S.C. § 1533(b)(2);**
**Alternatively, APA, 5 U.S.C. § 706)**

73.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 72 as though fully set forth herein.

74.     The Service acknowledged, as it must, that Unit 1 will only become suitable habitat if the land is managed to develop the requisite PCEs. *See* 77 Fed. Reg. 35135. The Service also acknowledged that Unit 1 is comprised entirely of private land, *id.* at 35134-35135, and that private landowners cannot be compelled to manage the land for recovery purposes, *id.*

at 35126. In fact, because Unit 1 is unoccupied and used for timber harvesting and has the potential for development of oil and gas exploration, that the Service valued at approximately $34 million, the private owners have no intent to convert their property to conservation purposes. Not only do these facts compel a finding that Unit 1 is not "essential for the conservation of the species," but they also compel a finding that the benefits of exclusion outweigh the benefits of inclusion under Section 4(b)(2) of the Act. The Service's unsupported conclusion that the "economic analysis did not identify any disproportionate costs that are likely to result from the designation," 77 Fed. Reg. 35141, is arbitrary and irrational. *See Natural Resources Defense Council v. U.S. Department of Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997) ("Essentially, we must ask 'whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" (citation omitted)).

75.     By these acts or omissions, Defendants violated the ESA, 16 U.S.C. § 1533(b)(2); and, alternatively, the APA, 5 U.S.C. § 706. The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

### Fifth Claim for Relief

### Failure to Conduct NEPA Review
### (Violation of NEPA, 42 U.S.C. § 4321, *et seq.*;
### Alternatively, APA, 5 U.S.C. § 706)

76.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 75 as though fully set forth herein.

77.     In its final rule designating critical habitat for the dusky gopher frog, the Service stated categorically that the National Environmental Policy Act does not apply to critical habitat designations outside the Tenth Circuit Court of Appeals. *See* 77 Fed. Reg. at 35121. But the better argument is to the contrary.

78. Neither the Endangered Species Act nor any other statute exempts critical habitat designations from NEPA compliance. Both the Tenth Circuit in *Catron County Board of Commissioners v. U.S. Fish and Wildlife Service*, 75 F.3d 1429 (10th Cir. 1996), and the D.C. District Court, in *Cape Hatteras Access Preservation Alliance v. U. S. Department of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004), have held that critical habitat designations are subject to review under NEPA. In *Douglas County v. Babbitt*, 48 F.3d 1495 (9th Cir. 1995), the Ninth Circuit parted ways with the Tenth Circuit and held that NEPA review was not required for critical habitat designations where there is no physical change to the environment. However, this case is different.

79. Contrary to *Douglas County*, the critical habitat designation for the dusky gopher frog literally calls for human interference with the environment through management of the habitat by, among other things, regular controlled burns. Frequent fires are necessary to maintain the open canopy and ground cover vegetation of the gopher frog's aquatic and terrestrial habitat. *See* 77 Fed. Reg. 35129-35130. These burns can have significant adverse effects on the physical environment, including air pollution, water pollution, loss of forest resources, and habitat for other species. But the critical habitat designation does not discuss these effects. That can only be done through the NEPA review process. Therefore, notwithstanding the Ninth Circuit decision, and in accordance with the Tenth Circuit decision, NEPA review should have been undertaken here.

80. By these acts or omissions Defendants violated NEPA, 42 U.S.C. § 4321, *et seq.*; and the APA, 5 U.S.C. § 706. The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

**Sixth Claim for Relief**

**U.S. Constitutional Violation**
**(Commerce Clause, Article 1, Section 8,**
**Clause 3, and APA, 5 U.S.C. § 706)**

81.     Markle realleges and incorporates by reference the allegations contained in Paragraphs 1 through 80 as though fully set forth herein.

82.     The Service cites a long list of cases that have upheld the agency's authority to regulate intrastate, noncommercial species under the commerce power.  *See* 77 Fed. Reg. at 35120.  However, those cases do not address whether the agency has authority under the Commerce Clause to regulate private land that has no connection to the protected species other than through the critical habitat designation itself.  The designation of Unit 1 as critical habitat for the dusky gopher frog is contrary to U.S. Supreme Court precedent not only because the frog is not a regulable entity but also because the critical habitat designation creates, rather than regulates, the putative economic activity.  *See United States v. Lopez*, 514 U.S. 549; *United States v. Morrison*, 529 U.S. 598 (2000); and, more recently, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2573-74 (2012) ("This Court's precedent reflects this understanding: As expansive as this Court's cases construing the scope of the commerce power have been, they uniformly describe the power as reaching 'activity.'  *E.g.*, *United States v. Lopez*, 514 U.S. at 560, 115 S. Ct. 1624, 131 L. Ed. 2d 626.  The [challenged provision], however, does not regulate existing commercial activity.").  Simply put, the uncontested facts show that the Service is not regulating existing commercial activity.  The regulation of Unit 1 as critical habitat is unconstitutional because the land does not contain the listed species or any usable habitat and any activity on the land cannot affect the species or its habitat.

83.     By these acts or omissions Defendants violated art. 1, § 8, cl. 3, of the U.S. Constitution and the APA, 5 U.S.C. § 706.   The final rule designating critical habitat for the dusky gopher frog is, therefore, invalid.

## PRAYER FOR RELIEF

**Wherefore, Markle prays:**

**As to the First Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid because Defendants failed to make the threshold determination as to the quality and location of habitat essential to the conservation of the species in violation of Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), or alternatively, that the final rule is void under the APA, U.S.C. § 706.

**As to the Second Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid because Defendants failed to apply the proper standard for designating critical habitat in violation of Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), or, alternatively, that the final rule is void under the APA, 5 U.S.C. § 706.

**As to the Third Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid because the economic analysis was inadequate in violation of Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), or, alternatively, that the final rule is void under the APA, 5 U.S.C. § 706.

**As to the Fourth Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid because Defendants' failure to exclude Unit 1 was arbitrary and irrational in violation of Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), or, alternatively, that the final rule is void under the APA, 5 U.S.C. § 706.

**As to the Fifth Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid because Defendants failed to comply with NEPA, 42 U.S.C. § 4321, *et seq.*, and the final rule is void under the APA, 5 U.S.C. § 706.

**As to the Sixth Claim for Relief:**

That this Court declare the final rule designating critical habitat for the dusky gopher frog invalid under the Commerce Clause, U.S. Constitution, art. 1, § 8, cl. 3, and the final rule is void under the APA, 5 U.S.C. § 706.

**As to all Claims for Relief:**

That this Court:

(a)   issue a judgment and order enjoining Defendants from enforcing or otherwise acting pursuant to the final rule, vacating the rule, and remanding the rule for redesignation of critical habitat in accordance with ESA, NEPA, the APA, and the U.S. Constitution;

(b)   award Plaintiff attorneys' fees and costs to the extent permitted by law; and

(c)   grant such other relief as the Court shall deem just and proper.

DATED:  February 7, 2013.

Respectfully submitted,

M. REED HOPPER, *Pro Hac Vice* Pending
mrh@pacificlegal.org
DANIEL A. HIMEBAUGH *Pro Hac Vice* Pending
dah@pacificlegal.org
Pacific Legal Foundation
10940 NE 33rd Place, Suite 210
Bellevue, Washington 98004
Telephone:  (425) 576-0484
Facsimile:  (425) 576-9565

ANDREW J. HARRISON, JR., T.A.
(Louisiana Bar No. 20463)
ajh@ajharrisonlawllc.com
MADELINE AHLGREN
(Louisiana Bar No. 31009)
mahlgren@ajharrisonlawllc.com
Harrison Law, LLC
One American Plaza, Suite 820
Baton Rouge, Louisiana 70825
Telephone:  (225) 388-0065
Facsimile:  (225) 388-0501


/s/ANDREW J. HARRISON, JR., ESQ.
ANDREW J. HARRISON, JR., ESQ.
(Louisiana Bar No. 20463)

Attorneys for Plaintiff, Markle Interests, LLC