IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

|  |  |
|---|---|
| MARKLE INTERESTS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, *et al*.,<br><br>Defendants. | Civ. No. 2:13-cv-00234-MLCF-SS<br>SECTION: F(1)<br>JUDGE: MARTIN L.C. FELDMAN<br>MAG. JUDGE: SALLY SHUSHAN<br><br><br>**MEMORANDUM IN SUPPORT<br>OF MOTION TO INTERVENE<br>AS DEFENDANTS** |

## INTRODUCTION

The Center for Biological Diversity ("Center") and Gulf Restoration Network ("GRN") (collectively, "Applicant-Intervenors") submit this Memorandum in support of their Motion to Intervene as Defendants.  At issue in this case is protection of critical habitat for the dusky gopher frog, a highly endangered amphibian with likely less than 100 adult frogs remaining in its wild population.  Specifically, Plaintiff challenges the final rule designating critical habitat for the dusky gopher frog under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq*.  77 Fed. Reg. 35118 (June 12, 2012).

Applicant-Intervenors have a strong interest in conserving the dusky gopher frog and have been active in seeking full protection for the dusky gopher frog under the ESA.  Their actions spurred the endangered listing of the dusky gopher frog in early 2002, as well as the designation of critical habitat at issue in this case.  The Center and GRN continue to advocate on behalf of the dusky gopher frog, working with a developer to secure protection of private lands

surrounding the frog's last remaining viable breeding pond and launching litigation against the U.S. Fish and Wildlife Service ("FWS") to secure a recovery plan for the frog.

Applicant-Intervenors readily meet the test under Federal Rule of Civil Procedure 24(a) for intervention as of right, which is warranted whenever: (1) the application is timely; (2) the applicant has a legally protected interest in the action; (3) the action threatens to impair that interest; and (4) none of the existing parties adequately represent the would-be intervenor's interests.  Fed. R. Civ. P. 24; *Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 247 (5th Cir. 2009).  In this case, intervention is timely because Plaintiff recently filed the case, which is in the early stages.  Applicant-Intervenors also have a legally cognizable interest in the fate of the dusky gopher frog, as evidenced by their active involvement in protection of this species over many years.  Additionally, this lawsuit has the potential to prejudice their interests in conserving the frog because Plaintiff seeks to invalidate the critical habitat designation of the dusky gopher frog, which would result in reduced habitat protections.  Finally, the interests of the Center and GRN are not adequately represented by Federal Defendants, who have designated and protected critical habitat for the dusky gopher frog only after successful litigation brought by the Center.

Intervention of the Center and GRN is opposed by Plaintiff, and Federal Defendants take no position on the intervention.  Declaration of Collette L. Adkins Giese in Support of Motion to Intervene as Defendants ("Adkins Giese Dec.") ¶ 2.  As argued below, the Court should grant the Motion to Intervene as Defendants.

## LEGAL FRAMEWORK

### Protection under the Endangered Species Act

This case concerns protection of the dusky gopher frog under the Endangered Species Act ("ESA"), a law enacted by Congress to conserve endangered and threatened species and the ecosystems upon which they depend.  16 U.S.C. § 1531(b).  "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost."  *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 (1978).

The ESA requires the Secretary of Interior, through the FWS, to determine whether any species is "endangered" or "threatened."  Once a species is listed under the ESA, an array of statutory protections applies.  For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat."  16 U.S.C. § 1536(a)(2).  In addition, the harming or "take" of listed species is generally prohibited.  *Id*. §§ 1532(19), 1538(a); 50 C.F.R. §§ 17.21(c), 17.31(a).  Section 4(f) requires the FWS to develop recovery plans for listed species, which identify actions necessary to save endangered species from extinction and eventually remove their protection under the ESA.  16 U.S.C. § 1533(f).

### Designation of Critical Habitat under the ESA

The ESA requires FWS "to the maximum extent prudent and determinable" to designate critical habitat for listed species.  *Id.* §§ 1533(a)(3), (b)(6)(C); 50 C.F.R. § 424.12.  Critical habitat is defined as those "specific areas within the geographical areas occupied by the species, at the time it is listed … on which are found those physical or biological features [that are] (I) essential to the conservation of the species and (II) which may require special management considerations or protection."  16 U.S.C. § 1532(5)(A)(i).  The FWS may also designate

"specific areas outside of the geographical area occupied by the species at the time it is listed…

upon a determination by the Secretary that such areas are essential for the conservation of the

species."  16 U.S.C. § 1532(5)(A)(ii).

When considering the designation of critical habitat, the FWS focuses on the principal

biological or physical constituent elements within the defined area that are essential to the

conservation of the species.  50 C.F.R. § 424.12(b).  Primary constituent elements may include,

but are not limited to, the following: breeding sites, feeding sites, seasonal wetland or dryland,

water quality or quantity, vegetation type, and specific soil types.  *Id*.  In making the critical

habitat designation the FWS may also consider the following: (1) space; (2) food, water, air,

light, minerals, or other nutritional or physiological requirements; (3) cover or shelter; (4)

breeding sites; and (5) habitats protected from disturbance or representative of historical

geographic or ecological distribution of the species.  *Id*.

When promulgating a final rule designating critical habitat for a listed species, the FWS

must rely on the best scientific data available and take into consideration the economic impact,

and any other relevant impact, of specifying any particular area as critical habitat.  16 U.S.C. §

1533(b)(2).  When a critical habitat decision is not made contemporaneously with the listing

decision, the FWS has 12 months from the date of listing to designate critical habitat.  *Id.* §

1533(b)(6)(C)(ii); 50 C.F.R. §424.17(b)(2).

## FACTUAL AND PROCEDURAL HISTORY

### The Center and GRN

The Center for Biological Diversity is a non-profit 501(c)(3) organization with field

offices throughout the United States, including Arizona, New Mexico, California, Nevada,

Oregon, Washington, Alaska, Minnesota, Vermont, Florida, Washington, and Washington, D.C.

Declaration of Noah Greenwald ("Greenwald Dec.") ¶ 3.  The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction.  *Id*.  The Center has more than 39,000 members and over 500,000 online supporters. *Id*.  The Center and its members are concerned with the conservation of imperiled species, including the dusky gopher frog, and the effective implementation of the ESA.  *Id*.

Plaintiff Gulf Restoration Network ("GRN") is a non-profit 501(c)(3) organization headquartered in New Orleans, Louisiana.  Declaration of Cynthia Sarthou ("Sarthou Dec.") ¶ 3. GRN is a network of environmental, social justice, and citizens' groups and individuals committed to restoring the Gulf of Mexico to an ecologically and biologically sustainable condition.  *Id*.  GRN was formed in 1994 to advance environmental protection, raise awareness of environmental issues in Gulf States and to increase communication and coordination of member activities across the region.  *Id*.  GRN has approximately 1900 members. *Id*.

**Natural History of the Dusky Gopher Frog**

The dusky gopher frog (*Rana sevosa*) is a darkly-colored, moderately-sized frog with warts covering its back and dusky spots on its belly.  66 Fed. Reg. 62993 (Dec. 4, 2001).  It lives underground in pine forests, historically dominated by longleaf pine, and breeds in small temporary ponds.  *Id*. at 62994.

The dusky gopher frog is currently known from only three sites in Harrison and Jackson counties in southern Mississippi, with only one of these sites regularly showing reproduction by the frog.  77 Fed. Reg. at 35130.  FWS has estimated that less than 100 adult dusky gopher frogs remain.  Mississippi Gopher Frog Recovery Action Plan (Ex. A to Adkins Giese Dec.) at A-2.

The frog is primarily threatened by habitat loss and disease. *See id.* at A-1. Due to its small numbers, it is also highly susceptible to genetic isolation, inbreeding, and random demographic or human related events. *Id.*

**Protection of the Dusky Gopher Frog under the Endangered Species Act**

In response to litigation from the Center, the FWS listed the dusky gopher frog (then known as the Mississippi gopher frog) as an endangered species in December of 2001. 66 Fed. Reg. 62993 (Dec. 4, 2001). The Center's litigation led to a judicially approved settlement agreement requiring FWS to submit a final listing decision on the frog to the Federal Register by November 28, 2001. *Id.* at 62996.

At the time of the proposed listing, the FWS found that designation of critical habitat was prudent. 65 Fed. Reg. 33283, 31388-31389 (May 23, 2000). However, the agency did not designate critical habitat at that time as the ESA intends, 16 U.S.C. § 1533(a)(3)(A)(i), citing budgetary and workload constraints. 66 Fed. Reg. at 63000.

To compel the FWS to designate critical habitat consistent with the ESA, on November 15, 2007, the Center and a local partner filed a lawsuit against the FWS and the Secretary of the Interior for failure to timely designate critical habitat for the dusky gopher frog. *Friends of Mississippi Public Lands v. Kempthorne*, 07-CV-02073 (D.D.C. Nov. 15, 2007). In a court-approved settlement dated June 10, 2008, the FWS agreed to submit to the Federal Register a new prudency determination. If the designation was found to be prudent, FWS agreed to submit a proposed designation of critical habitat by May 30, 2010, and a final designation by May 30, 2011. *Id.*

On June 3, 2010, the FWS proposed to designate 1,957 acres of critical habitat for the frog. 75 Fed. Reg. 31387 (June 3, 2010). Thereafter the FWS sought and received a one-year

extension from the court for publication of the final rule designating critical habitat. *Friends of Mississippi Public Lands v. Kempthorne*, 07-CV-02073 (D.D.C. May 4, 2011).

In response to comments from the Center and GRN, scientific peer review and others, the FWS issued a revised proposed critical habitat designation, increasing the 2010 proposal of 1,957 acres by more than threefold to 7,015 acres.  76 Fed. Reg. 59774 (Sept. 27, 2011); *see* Declaration of Casey DeMoss Roberts (hereinafter "Roberts Dec.") at ¶ 6 (explaining that GRN commented on the draft critical habitat rules).  The agency thereafter again revised the proposed critical habitat designation to reflect a change in its methodology for calculating frog dispersal distances, resulting in a reduction of 477 acres from the September 2011 revised proposed rule. 77 Fed. Reg. 2254, 2255 (Jan. 17, 2012).

On June 12, 2012, the FWS issued its final rule designating critical habitat for the frog. 77 Fed. Reg. 35118 (June 12, 2012).  That rule designates approximately 1,544 acres in St. Tammany Parish, Louisiana, and approximately 4,933 acres in Forrest, Harrison, Jackson, and Perry Counties, Mississippi.  In total, approximately 6,477 acres are designated as critical habitat for the dusky gopher frog.  *Id.*

**Applicant-Intervenors' Ongoing Efforts to Protect the Frog and Its Critical Habitat**

In addition to pushing for designation of critical habitat, the Center and GRN have in other ways advocated for conservation of the dusky gopher frog and its habitat.  One of the primary threats to the dusky gopher frog is habitat destruction.  66 Fed. Reg. at 62997.  As such, most of these efforts have been focused on protecting habitat on private lands adjacent to the frog's last viable breeding pond.  The frog's breeding pond is only 650 feet from private property slated for residential and commercial development, including a 20,000-unit residential community called the "Town of Tradition."  *Id.*

7

In April of 2010, the Center and GRN sent a notice of intent to sue the U.S. Department of Housing and Urban Development, the U.S. Fish and Wildlife Service, the state of Mississippi and other agencies for approving the construction of a regional wastewater treatment plant that would support development of the Town of Tradition.  Greenwald Dec. ¶ 9; Sarthou Dec. ¶ 4. The notice alleges that the agencies' approval violates section 7 of the ESA for failing to ensure through consultation with the FWS that development of the wastewater treatment plant does not jeopardize the continued existence of the frog.  Greenwald Dec. ¶ 9; Sarthou Dec. ¶ 4.

Thereafter, on November 23, 2011, the Center and GRN sent a notice of intent to sue the U.S. Army Corps of Engineers for authorizing the developer of the Town of Tradition to conduct dredge and fill activities adjacent to primary breeding habitat of the frog without first consulting with the FWS to ensure that the activity would not jeopardize the frog, also in violation of Section 7 of the ESA.  Greenwald Dec. ¶ 10; Sarthou Dec. ¶ 5.

In response to these threats of litigation and with the goal of protecting the frog, the developer of the Town of Tradition entered into a Memorandum of Understanding with the Center and GRN.  Greenwald Dec. ¶ 11; Sarthou Dec. ¶ 6.  That agreement outlines steps the parties will take to facilitate the exchange or purchase of the private lands adjacent to the frog's breeding pond.  Greenwald Dec. ¶ 11; Sarthou Dec. ¶ 6.

The Center and GRN are also working to speed development of a recovery plan for the frog.  Greenwald Dec. ¶ 12; Sarthou Dec. ¶ 7.  Recovery plans are the main tool for identifying actions necessary to save endangered species from extinction, such as research and habitat restoration.  Greenwald Dec. ¶ 12; Sarthou Dec. ¶ 7.  On December 20, 2012, the groups filed a formal notice of intent to sue the Interior Department for failing to develop a recovery plan for dusky gopher frogs.  Greenwald Dec. ¶ 12; Sarthou Dec. ¶ 7.

8

**ARGUMENT**

Federal Rule of Civil Procedure Rule 24(a)(2) provides as follows:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). "The four parts of the intervention test are therefore (1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties." *Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 247 (5th Cir. 2009).

Although failure to satisfy any one element precludes the applicant's right to intervene, the Fifth Circuit has noted that "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and concluded that "intervention of right must be measured by a practical rather than technical yardstick." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)). Intervention should generally be allowed where "no one would be hurt and greater justice could be attained." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks and citation omitted)).[1]

## I.   THE CENTER AND GRN SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT

The Motion to Intervene should be granted because Applicant-Intervenors meet the standard set forth in Federal Rules of Civil Procedure Rule 24(a)(2) and all four parts of the Fifth Circuit's test for intervention as explained below. Applicant-Intervenors have timely

---

[1] The Fifth Circuit holds that intervenors do not need to possess standing to sue where the intervention is into a subsisting and continuing Article III case or controversy. *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). Nevertheless, the declarations submitted by the Center and GRN in support of intervention also demonstrate the organizations' standing.

demonstrated an interest in the protection of the dusky gopher frog and its critical habitat that may be impaired by this lawsuit, and that their interests are not adequately represented by the existing parties.

### A.      The Motion to Intervene is Timely

In assessing the timeliness of an application for intervention, the Fifth Circuit considers "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 247-248 (5th Cir. 2009) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)).

Here, Plaintiff filed its complaint on February 7, 2013.  Less than three months have elapsed since the inception of the suit.  No dispositive motions have been filed, no hearings have occurred, the record has not been submitted, and no discovery has been taken.  There is no probability of prejudice to the existing parties because intervention at this early stage will not cause delay in the proceedings and applicants have concurrently filed an answer with this intervention motion.  Yet Applicant-Intervenors and their interests in conserving the frog, which are explained below, would be prejudiced if intervention is denied.

Because there has been no delay and denial of intervention would prejudice Applicant-Intervenors, the motion is timely.  *See id.*

### B.      Applicant-Intervenors Have a Legally Protected Interest in the Dusky Gopher Frog

In addition to timeliness, Applicant-Intervenors must demonstrate an interest that will be impaired or impeded without intervention.  *In re Lease Oil Antitrust Litig.*, 570 F.3d at 250.  The

Fifth Circuit has held that an applicant must point to an interest that is "direct, substantial, [and] legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)).  The Court has observed that "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Id*. (quoting *Espy*, 18 F.3d at 1207).

As is apparent from the procedural history described above, the Center and GRN and their members have a clear and legally cognizable interest in this action.  Their advocacy and past lawsuits compelled the FWS to protect the dusky gopher frog and its critical habitat in the first instance.  The Center's primary mission is the protection of imperiled species such as the dusky gopher frog and its habitat.  Greenwald Dec. ¶ 3.  And the protection and restoration of habitats in the Gulf is a primary mission of GRN.  Sarthou Dec. ¶ 3.  Further, the Center and GRN and their members and staff have significant professional and personal interests in the dusky gopher frog, its habitat, and its protection.  *See generally* Greenwald Dec.; Sarthou Dec. Roberts Dec.

Such long-standing interest in the protection of the dusky gopher frog provides a sufficient basis for intervention in this case.  *See, e.g.*, *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering a species' protection under the ESA); *Idaho Farm Bureau Fed'n. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported.");

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right).

### C.    This Action Threatens to Impair Applicant-Intervenors' Interests

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, the denial of intervention will impede the prospective intervenor's ability to protect its interests in the subject of the action.  Fed. R. Civ. P. 24(a)(2).  As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."

There is no question that the disposition of Plaintiff's claim has the potential to impair the interests of the Center and GRN.  Their interests in the dusky gopher frog would be directly and adversely affected by the relief Plaintiff seeks: vacating the final rule designating critical habitat for the dusky gopher frog.  If Plaintiff succeeds, the dusky gopher frog would lose essential protections under the ESA, which were the result of years of advocacy by the Center and GRN.

Courts have repeatedly found such impairment to sustain intervention for environmental groups in lawsuits such as this.  In *Idaho Farm Bureau Federation*, the Ninth Circuit held that a disposition of the action in favor of plaintiffs resulting in the delisting of the Bruneau Hot Springs snail "would impair [intervenor's] ability to protect their interest in the Springs Snail and its habitat."  58 F.3d at 1398.  In *Coalition of Arizona/New Mexico Counties for Stable Economic Growth*, the Tenth Circuit held that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter," be impaired by a ruling in favor of the plaintiffs to delist the owl "by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction."  100 F.3d at 844; *see also Sierra Club v. Espy*, 18 F.3d 1202,

1207 (5th Cir. 1994) (holding that timber trade associations could intervene in lawsuit challenging the legality of certain logging practices because "an adverse resolution of the action would impair their ability to protect their interest" because of "stare decisis effect of the district court's judgment").

Further, the members and staff of the Center and GRN would be harmed both professionally and personally if the dusky gopher frog habitat is no longer protected under the ESA as critical habitat.  Greenwald Dec. ¶ 18; Roberts Dec. ¶ 13.  In addition, if the Center and GRN are not allowed to intervene in this action, their ability to carry out their missions will be significantly impaired.  Greenwald Dec. ¶ 19; Sarthou Dec. ¶ 8.

Because Applicant-Intervenors are so situated that the disposition of this action may as a practical matter impair their ability to protect their interests in the dusky gopher frog, Applicant-Intervenors satisfy the third requirement of intervention as of right.

### D.   Applicant-Intervenors' Interests Are Not Adequately Represented by the Existing Parties

An applicant for intervention has only a "minimal burden" as to inadequate representation.  *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002).  All that must be shown is that representation by the existing parties "may be" inadequate.  *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972).  Under this liberal approach to intervention, representation may be inadequate if the interests "may diverge in the future, even though, at this moment, they appear to share common ground . . . ."  *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002).

Here, Applicant-Intervenors meet the minimal burden of showing inadequate representation.  First, as discussed above, Applicant-Intervenors had to sue the FWS to get the

13

challenged rules and protections in place in the first instance, which demonstrates a divergence in interests and priorities. *See, e.g.*, *Idaho Farm Bureau Federation*, 58 F.3d at 1398 ("FWS was unlikely to argue on behalf of [applicants], the very organizations that compelled FWS to make a final decision by filing a lawsuit.  FWS would not have adequately represented [applicant's] interests."); *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) ("[T]here is further reason to doubt that the Department [of the Interior] will fully protect [the applicant's] interest … in light of the fact that the Department began its rulemaking only reluctantly after [the applicant] brought a law suit against it.").  The failure of the FWS to advocate for full and fair protection of the dusky gopher frog in the past indicates that the FWS may not adequately represent the Center's interest in the future.

Moreover, the Fifth Circuit has frequently recognized that governmental representation of private intervenors may be inadequate because the government must represent the public interest, not the interests of the private entity.  *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002) (finding inadequate representation by government agency because the government represents a broader interest than that of a private entity); *Doe #1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (same); *see also Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498-99 (9th Cir. 1985) (holding that defendant U.S. Forest Service could not be expected to make all the arguments of proposed intervenors).

In addition, the Center is likely to raise arguments that the FWS will not.  For example, Applicant-Intervenors are likely to present different arguments from the FWS on Plaintiff's third claim for relief, which challenges the Economic Analysis's "baseline" approach by relying on the Tenth Circuit's decision in *New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277 (10th Cir. 2001).  The Tenth Circuit's decision is largely based on a FWS

regulation, 50 C.F.R. § 402.02, that provides the standard for "adverse modification" of critical habitat. *New Mexico Cattle Growers Ass'n*, 248 F.3d at 1283. Applicant-Intervenors are likely to argue that this regulation is faulty, as found in *Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1173 (9th Cir. 2010) and *Sierra Club v. United States Fish & Wildlife Serv.*, 245 F.3d 434, 440-45 (5th Cir. 2001), and that the agency's faulty regulation led the Tenth Circuit to reject the baseline approach. The FWS, on the other hand, may stand by 50 C.F.R. § 402.02 and fail to raise this argument. Thus, the test of whether the FWS may not represent the Center's interests is met in this instance.

For all these reasons, this Court should grant intervention as of right to the Center and GRN pursuant to Rule 24(a).

## II.     IN THE ALTERNATIVE, PERMISSIVE INTERVENTION IS WARRANTED

Should this Court find that Applicant-Intervenors are not entitled to intervene as of right under Rule 24(a), the Center and GRN ask that this Court grant permission to intervene pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) provides that:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). Intervention under Rule 24(b) is left to the sound discretion of the district court. *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

The Center and GRN meet these requirements. The Court has jurisdiction over Applicant-Intervenors and their defenses under 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (the APA), and 16 U.S.C. § 1540(g) (the ESA's citizen suit provision) as they all involve issues of federal law in defending against Plaintiff's claims. As discussed above in the context of intervention as of right, the intervention application is timely and existing parties will not be

15

prejudiced because of intervention in this early phase of the proceeding.  Lastly, Applicant-Intervenors' defenses are in common with Plaintiff's claims both in law and fact, as they address the exact matters raised by Plaintiff as to the protection of dusky gopher frog critical habitat under the Endangered Species Act.

## CONCLUSION

For the reasons set forth above, the Center and GRN respectfully request that this Court grant their motion to intervene as of right or, in the alternative, permissive intervention.  If granted intervention, the Center and GRN will submit consolidated briefing according to the schedule imposed by the Court or the local rules.

Dated: April 25, 2013

/s/ Elizabeth Livingston de Calderón

Elizabeth Livingston de Calderón
(LA Bar. No. 31443)
TULANE ENVIRONMENTAL LAW CLINIC
6329 Freret Street
New Orleans, LA 70118
Telephone: 504-862-8819
Email: ecaldero@tulane.edu

Collette L. Adkins Giese (*Pro Hac Vice* Applicant)
(MN Bar No. 035059x)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 339
Circle Pines, MN 55014-0339
Telephone: 651-955-3821
Email: cadkinsgiese@biologicaldiversity.org

John Buse (*Pro Hac Vice* Applicant)
(CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA  94104
Telephone: 323-533-4416
Email: jbuse@biologicaldiversity.org

16

*Attorneys for Intervenor-Defendant Applicants Center for Biological Diversity and Gulf Restoration Network*

## CERTIFICATE OF SERVICE

I hereby certify that today I electronically filed the foregoing Memorandum in Support of Motion to Intervene as Defendants and the attached supporting declarations with the Clerk of the Court using the CM/ECF system, which will send notification of such upon all attorneys of record.

Dated: April 25, 2013

/s/ Elizabeth Livingston de Calderón

Elizabeth Livingston de Calderón

17