**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MARKLE INTERESTS, LLC** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 13-cv-00234** |
| **UNITED STATES FISH AND WILDLIFE** | ) | **c/w 13-362 & 13-413** |
| **SERVICE, et al.** | ) | |
| | ) | **JUDGE MARTIN L.C. FELDMAN** |
| **Defendants.** | ) | **SECTION "F"** |
| | ) | |
| | ) | **MAG. SALLY SHUSHAN** |
| | ) | **DIVISION (1)** |
| | ) | |
| | ) | |

**STATEMENT OF UNCONTESTED MATERIAL FACTS FILED IN CONNECTION
WITH POITEVENT LANDOWNERS' MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, come P&F Lumber Company (2000), L.L.C., St. Tammany Land Co., L.L.C. and PF Monroe Properties, L.L.C, and pursuant to Local Rule 56.1, submit the following Statement of Uncontested Material Facts in support of their Motion for Summary Judgment:

**IDENTITY AND INTERESTS OF PLAINTIFFS**

1.

Plaintiffs P&F Lumber Company (2000), L.L.C., St. Tammany Land Co., L.L.C. and PF Monroe Properties, L.L.C.  (collectively, the "Poitevent Landowners") are each limited liability companies organized under the laws of the State of Louisiana with their respective principal places of business in the State of Louisiana.

1

2.

Defendant U.S. Fish and Wildlife Service ("FWS") designated 1,544 acres in St. Tammany Parish, Louisiana as "critical habitat" for the dusky gopher frog (sometimes herein, the "frog") covering lands owned in part by the Poitevent Landowners known as "Critical Habitat Unit # 1" ("Unit 1") through a rule (the "Rule").  77 Fed. Reg. 35118 *et seq*.

3.

The Poitevent Landowners and Markle Interests, L.L.C. ("Markle") together own the entire undivided interest in approximately 1,392 acres of timberland in Unit 1 subject to the Rule (the "Poitevent Lands"), while Plaintiff Weyerhaeuser Company ("Weyerhaeuser") owns 152 acres of timberland in Unit 1 subject to the Rule.  AR 1825.

4.

Poitevent Landowners own most, if not all of the lands surrounding the Poitevent Lands in Unit 1.  *See* Declaration of Edward Poitevent, attached to the Memorandum in Support of Motion for Summary Judgment as Exhibit "B," ¶¶ 3 and 8 (the "Poitevent Decl.").

5.

The Unit 1 lands are a highly-managed tree farm, with trees growing in furrowed rows similar to corn, wheat, sugar and other crops.

6.

Weyerhaeuser holds a long-term timber lease covering the Poitevent Lands that terminates June 30, 2043.  AR 1825.

## LISTING AND CRITICAL HABITAT DESIGNATION
## <u>OF THE DUSKY GOPHER FROG</u>

7.

On December 4, 2001, the U.S. Fish and Wildlife Service ("FWS") listed the "Mississippi gopher frog," as an "endangered species." *See* 66 Fed. Reg. 62993, *et seq*.

8.

On November 27, 2007, the Center for Biological Diversity ("CBD") and Friends of Mississippi Public Lands sued FWS in the United States District Court for the District of Columbia to require FWS to designate critical habitat for the dusky gopher frog. *See Friends of Mississippi Public Lands and Center for Biological Diversity* v. *Kempthorne,* Civil Action No. 07-CV-02073 (D. D.C. 2007) (the "CBD Lawsuit"). AR 2421-2433.

9.

FWS then settled with CBD in a settlement in which FWS agreed to submit to the *Federal Register* a proposed designation of frog critical habitat by May 30, 2010, and a final designation of frog critical habitat by May 30, 2011.

10.

FWS published a proposed rule to designate critical habitat for the frog on June 5, 2010. 75 Fed. Reg. 31387.

11.

FWS' original proposal to locate critical habitat for  the frog did not include Unit 1 lands and was confined to lands in the Forrest, Harrison, Jackson and Perry Counties, in the  State of Mississippi.  75 Fed. Reg. 31387.

12.

Peer reviewers and other commenters then told the FWS that the lands in Unit 1 should be added to expand the area covered by the Rule's critical habitat for the frog. FWS and the CBD then agreed to extend the deadline established by their original settlement, and the Court issued a modification to the original settlement on May 4, 2011, in which FWS agreed to send a revised proposed critical habitat rule for the frog to the *Federal Register* by September 15, 2011, and a final critical habitat rule to the Federal Register by May 30, 2012.

13.

The Poitevent Landowners were never informed about the CBD-FWS suit or their settlement and were completely left out of any negotiations to include their lands in the proposed Rule. *See* Poitevent Decl., Ex. "B," ¶ 4.

14.

The first time the Poitevent Landowners learned that their lands were the subject of the proposed Rule was in a telephone call from FWS agents Linda LaClaire and Carey Norquist to undersigned counsel on Friday, May 20, 2011. *See* Poitevent Decl., Ex. "B," ¶ 4.

15.

Prior to this call, in March 2011, FWS agents and Prof. Joseph Pechmann (a "peer reviewer" of the FWS proposal to designate critical habitat for the frog) entered the Poitevent Lands without authorization from the Poitevent Landowners to view the property and its supposed suitability for the frogs. *See* Poitevent Decl., Exhibit "B," ¶ 5.

FWS published a revised proposed critical habitat rule in the Federal Register on September 27, 2011 (76 Fed. Reg. 59774) (the "Proposed Rule") and replaced the FWS' June 3, 2010 proposed critical habitat rule in its entirety. 75 Fed. Reg. 31387.

16.

The September 27, 2011 Proposed Rule included Unit 1 in St. Tammany Parish, Louisiana as proposed critical habitat for the frog for the first time. 77 Fed. Reg. 35118, *et seq*.

17.

Unit 1 landowners, including the Poitevent Landowners, submitted comments to FWS opposing the designation.   Among other things, the Poitevent Landowners, Markle and Weyerhaeuser stated for the record that they do not intend to manage this land to create suitable habitat for the Dusky gopher frog. 77 Fed. Reg. 35123.

18.

Specifically, the Poitevent Landowners and Markle submitted written comments to FWS dated  November 23, 2011 (AR 1692, et seq.) and  March 1, 2012 (AR 2064,et seq.), and offered testimony at a hearing held by FWS in Gulfport Mississippi on January 31, 2012.  AR 2379-2384.

19.

On June 12, 2012, FWS designated critical habitat for the Dusky gopher frog in the Rule. *See* 77 Fed. Reg. 35118, *et seq*.

5

20.

In the Rule, FWS designated as critical habitat for the dusky gopher frog 6,477 acres of land, made up of 15 separate parcels or "units" of land in Mississippi and Louisiana. 77 Fed. Reg. 35118, *et seq; see also* 77 Fed. Reg. 35134-135.

21.

Of the 6,477 acres in Mississippi and Louisiana covered by the Rule, the 1,544 acres of Unit 1 in St. Tammany Parish, Louisiana are the only lands in Louisiana. 77 Fed. Reg. 35118.

22.

Unit 1 is comprised solely of privately-owned land. 77 Fed. Reg. 35134-135.

23.

The remainder is of the land covered by the Rule is federally-owned forest land in the DeSoto National Forest in Mississippi. 77 Fed. Reg. 35124, 35125.

24.

At 1,544 acres, Unit 1 is by far the largest of the 15 Units covered by the Rule, and makes up 23.38% of the total designated critical habitat acreage.  77 Fed. Reg. 35118, 35134-135.

25.

The rule designating critical habitat for the dusky gopher frog is the culmination of FWS's decision-making and constitutes final agency action.  77 Fed. Reg. 35118, *et seq.*

26.

After the adoption of the Rule, the Poitevent Landowners provided a 60-day notice of intent to sue on or about October 19, 2012, in satisfaction of the notice requirement of the Endangered Species Act citizen suit provision, 16 U.S.C. § 1540(g)(2), 77 Fed. Reg. 35123-24.

## THE PHYSICAL AND BIOLOGICAL ELEMENTS
## FWS REQUIRES TO BE PRESENT TO SUPPORT FROG LIFE

27.

FWS is required to identify the physical and biological features that are "essential" to the conservation of the species, "focusing on the features' primary constituent elements" ("PCEs"). 50 C.F.R. §424.12(b).

28.

PCEs are those "physical and biological features that, when laid out in the appropriate quantity and spatial arrangement to provide for a species' life-history processes, are essential to the conservation of the species." 77 Fed. Reg. 35131.

29.

FWS identified three the PCEs for the dusky gopher frog on Unit 1. FWS requires that three physical and biological primary constituent elements ("PCEs") for the suitable habitat of dusky gopher frogs be present on the frog's "critical habitat":

(i) small, isolated, acidic ephemeral ponds (i.e., they must dry out seasonally to avoid the presence of frog predators, like fish) with open tree canopies and certain herbaceous vegetation necessary for frog reproduction, which attributes can be maintained only through the use of prescribed fire (66 Fed. Reg. 62999; 76 Fed Reg. 59775; 77 Fed. Reg. 35123, 35131);

(ii) upland non-breeding habitat comprised of forests "maintained by fires frequent enough to support an open canopy and abundant herbaceous ground cover and gopher tortoise burrows, small mammal burrows, stumpholes, or other underground habitat" (76 Fed. Reg. 59779); and

(iii) upland "connecting habitat" comprised of open-canopied forests with "abundant herbaceous species and subsurface structure providing shelter for frogs during seasonal movements (to and from breeding ponds), such as "deep litter cover, clumps of grass, or burrows" (76 Fed. Reg. 59780).

30.

Historically, the dusky gopher frog was endemic to the southern longleaf pine ecosystem: "They spend most of their lives underground in forested habitat consisting of fire-maintained, open-canopied, pine woodlands historically dominated by longleaf pine…" 77 Fed. Reg. 35129, 35130.

31.

To breed, frogs would travel seasonally from the forest to ephemeral ponds, returning to their forested environment, and followed by offspring that survived to metamorphose into frogs. 77 Fed. Reg. 35121.

**CURRENT STATUS OF THE FROGS IN LOUISIANA AND THE LANDS IN UNIT 1**

32.

Unit 1 is not currently occupied by the dusky gopher frog, nor was it so occupied at the time of the listing in 2001.  77 Fed. Reg. 35134-35135.

33.

The dusky gopher frog was last observed in the State of Louisiana in 1965. 77 Fed. Reg. 35124, 35133 and 35135.

34.

Unit 1 is not suitable for dusky gopher frog habitat as it does not currently contain all of the physical or biological features essential to the conservation of the frog: According to the FWS, "The uplands [on Unit 1] associated with the ponds do not currently contain the essential physical or biological features of critical habitat."  77 Fed. Reg. 35135.

35.

Of the 15 total units designated by FWS as critical habitat in the Rule, only Unit 1 fails to have the three PCEs required by FWS to support frog life.  77 Fed. Reg. 35131.

36.

All of the longleaf pine forests were harvested from Unit 1 prior to the beginning of Weyerhaeuser's lease with the predecessors in interest to Poitevent Landowners and Markle in 1953.  AR 1829.

37.

Some 90% of Unit 1 is comprised of closed canopy pine plantations averaging over 290 trees per acre, which is one tree every 12.2 feet.  AR 1829.  Moreover, as the trees grow, they will become more closed-canopy.  AR 2383.

38.

Many of the Unit 1 pond areas are not open-canopied (*see* AR 1831, citing to studies showing an increasing canopy cover at the ponds, a fact never refuted by FWS).

39.

FWS describes this loblolly pine tree farm as "unsuitable" for dusky gopher frog habitat. 77 Fed. Reg. 35129.

40.

None of the Unit 1 ponds are managed through prescribed fire, although FWS notes that is the only known means to make and keep the ponds suitable for the frog.  66 Fed. Reg. 62999; 76 Fed. Reg. 59775; 77 Fed. Reg. 35131.

41.

The Poitevent Landowners oppose the use of prescribed fire on its property.  AR 1859-61.

42.

FWS cannot require the Unit 1 Landowners to burn their land or otherwise conduct restoration activities.  77 Fed. Reg. 35121, 35123, and 35126.

43.

The administrative record is devoid of data to support the suitability requirement that the ponds contain water for at least 195 days every year.

44.

Unit 1 cannot be made suitable for gopher frog habitat without extensive and costly human intervention, including a change in land use, controlled burns to modify the vegetation, and transplanting frogs to the site.  77 Fed. Reg. 35129-32.

45.

FWS acknowledges that it has no power or authority to mandate that Unit 1 be transformed to make it suitable for frog habitat or to place frogs on the land.  *Id.* at 35126.

46.

The Poitevent Landowners have told the FWS on many occasions that they will not allow their lands to be converted to frog habitat and will not allow the frogs to be moved there.  *See* Exhibits "F" and "G" to Memorandum in Support of Motion for Summary Judgment.  AR 1852-1869 and attachments.

47.

FWS believes that Unit 1 can be "restored" to suitable frog habitat at some time in the future.  77 Fed. Reg. 35135.

48.

FWS says that, if the Poitevent Landowners cooperate with FWS, then FWS may then allow the Poitevents' development plans to proceed. As the FWS says in the Rule:

> Although we have no existing agreements with the private landowners of Unit 1 to manage this site to improve habitat for the dusky gopher frog, or to move the species there, <u>we hope to work with the landowners to develop a strategy that will allow them to achieve their objectives for the property and protect the isolated, ephemeral ponds that exist there</u>…

*See* 77 Fed. Reg. 35123. (emphasis added.)**.**

## THE ECONOMIC ANALYSIS OF DESIGNATION OF UNIT 1

49.

Section 4(b)(2) of the ESA requires the Secretary to consider "the economic impact … of specifying any particular area as critical habitat."  16 U.S.C. *§* 1533(b)(2).

50.

In conjunction with the critical habitat designation of Unit 1 for the frog, FWS completed an economic impacts analysis as mandated by Section 4 of the Endangered Species Act (the "EA"). 77 Fed. Reg. 35140-35141.

51.

The EA employs a methodology known as the "incremental" or "baseline" approach under which "incremental costs are those attributable solely to the designation of critical habitat above and beyond the baseline costs…"  77 Fed. Reg. at 35140.  The EA did not consider the

*quantitative* economic impacts of the critical habitat designation of Unit 1 coextensively (or cumulatively) with the listing of the gopher frog as an endangered species. 77 Fed. Reg. 35140-35142.

52.

The EA did not quantify numerous negative economic impacts arising out of its designation of Unit 1 as frog critical habitat, which thus lie hidden from the FWS, the Poitevent Landowners and the public. *See* Poitevent Decl. Ex. "B," ¶ 9-10.

53.

These hidden costs include the impact of the Rule on (i) oil and gas exploration, (ii) forestry operations on the land, (iii) the cost to the Poitevent Landowners' by a breach of their timber lease with Weyerhaeuser and (iv) costs resulting to the Poitevent Landowners, people living near the Poitevent Lands, communities adjacent to Unit 1, the driving public, and the Poitevent Landowners' adjacent lands due to required burns of the Poitevent Lands. If the FWS had considered al of the negative impacts noted by the Poitevent Landowners, the negative economic impact to them would have been approximately $63 million, not taking into account the devastation to their adjacent lands that burning would cause them to suffer. AR 6196.

54.

The EA shows that designating Unit 1 as critical habitat could have an adverse impact on the Poitevent Landowners and the other Unit 1 landowners that could reach as high as $33.9 million. 77 Fed. Reg. 35141 and 77 Fed. Reg. 35126.

55.

Although the EA concluded that designation of Unit 1 could cost the Unit 1 landowners as much as $33.9 million, and Unit 1 is currently incapable of supporting the gopher frog, FWS nevertheless concluded that the "economic analysis did not identify any disproportionate costs that are likely to result from the designation,"  77 Fed. Reg. 35141.

56.

The Poitevent Landowners own the adjacent or nearby properties and contest that the value of its property will increase because of decreased density.  Instead, the land value will decrease because of the adverse effects of, among other things, burning the property.  AR 6677.

57.

The EA did not identify any other "benefits" of designating Unit 1 as frog critical habitat because there are none, and so it was forced to limit the "benefits" arising from the critical habitat designation to "aesthetic" and "ecosystem" benefits.  *See* AR 6677.

58.

In the EA, FWS did not conduct a balancing analysis as part of its record of decision that weighed the economic impact on the landowners of Unit 1 against the benefit of including Unit 1 in the critical habitat designation.

59.

In the EA, FWS did not identify a specific economic activity regulated by the designation of Unit 1 as critical habitat in the EA or the Rule.

60.

FWS did not demonstrate an interstate commerce connection to Unit 1 in the EA or in the Rule.

61.

No current economic activity on Unit 1 can or does affect the gopher frog.

62.

FWS cannot regulate any private activity within Unit 1.  77 Fed. Reg. 35121; 35123.

63.

FWS made no finding in the Rule that the designation of Unit 1 as critical habitat constitutes the regulation of existing economic activity as the Constitution and U.S. Supreme Court precedent require.

64.

As neither the frog nor its required habitat elements (PCEs) existed on Unit 1 as of the date the Rule was issued (June 12, 2012), there is no economic activity that can be regulated under the ESA for Unit 1.

**THE ECONOMIC IMPACTS OF THE DESIGNATION ON UNIT 1 LANDOWNERS**

65.

FWS acknowledged in the EA that 99.5% to 99.7% of the economic burden of the imposition of the Rule falls on the landowners in Unit 1.  77 Fed. Reg. 35141.

66.

Unit 1 only makes up 23.38% of the total 6,477 acres covered by the Rule.

67.

If Poitevent Lands were ever converted to frog habitat, there would have to be regular controlled burns of the land. These regular burns will cause air pollution, drive away other species, and will diminish the value of Unit 1 and the Poitevent Landowners' adjoining lands, and will also endanger the lives and property of others.  *See* Poitevent Decl., Ex. "B," ¶ 9.

68.

If the Poitevent Landowners convert their land to frog habitat or allow the frog to be moved there, they will breach their timber contract with their timber lessee, Weyerhaeuser.  *See* Poitevent Decl., Ex. "B," ¶ 10.

69.

FWS will not pay the Poitevent Landowners the value of their lands so that they may be converted to frog habitat, including paying the Poitevent Landowners for the devaluation of their adjoining lands due to the burning of Unit 1. Rule at 77 Fed. Reg. 35121.

70.

In the EA, and in the Rule, FWS admits that much of the lands in Unit 1 are likely jurisdictional "wetlands" that will require a Clean Water Act Section 404 permit from the U.S. Army Corps of Engineers before the Poitevent Landowners can develop them. *See* EA, AR at pages 6661, et seq., and page 6664 (par. 76), 77 Fed. Reg 35127.

71.

When the Poitevent Landowners request a Section 404 permit from the Corps, that agency is then required to "consult" with FWS. *See* 77 Fed Reg. 35139-35141.

72.

FWS has stated that it will recommend that the Poitevent Lands not be developed in the future when the "consultation" process is invoked by the U.S. Corps of Engineers. FWS confirms this in the EA, as follows:

> Under the most conservation [sic] assumption (e.g., most likely to overstate rather than understate impacts) regarding the outcome of section 7 consultation, <u>the Service would recommend complete avoidance of development within Unit in order to avoid adverse modification of critical habitat.</u>

*See*, EA, page 4-3. (Emphasis added.)

73.

FWS has also said that, if the Poitevent Landowners cooperate with FWS then FWS may then allow the Poitevents' development plans to proceed.  77 Fed. Reg. 35123.

74.

The designation in the Rule of Unit 1 as frog critical habitat imposes significant regulatory burdens on the Poitevent Landowners and the Poitevent Lands, as lengthy and costly federal approval will be required for any activity by them as owner that may be deemed to affect the frog, including adverse modification of the designated critical habitat.

75.

The designation of Unit 1 as critical habitat results in a significant reduction in the value, potential use and marketability of the property within Unit 1.  Poitevent Decl., Ex. "B" ¶¶ 7, 9-10.

## THE NATIONAL ENVIRONMENTAL POLICY ACT

76.

The National Environmental Policy Act, 42 U.S.C. § 4321, et seq., ("NEPA") requires that a federal agency proposing "major Federal action[s] significantly affecting the quality of the human environment" prepare an Environmental Impact Statement (EIS), detailing the environmental impact of the action; unavoidable adverse environmental effects; alternatives to the action; relationship between the short-term uses and long-term productivity of the affected environment; and irretrievable and irreversible commitments of resources should the action be implemented. 42 U.S.C. § 4332(2)(C)(i)-(v). Alternatively, agencies may prepare an environmental assessment 40 C.F.R. § 1508.9.

77.

Although the FWS must comply with NEPA "to the fullest extent possible," 42 U.S.C. § 4332, FWS did not comply with NEPA before it issued the Rule. 77 Fed. Reg. 35144.

78.

In order for the Poitevent Lands to become suitable for the frogs, all of the trees currently on all 1,544 acres must be cut down, all furrows and ruts obliterated, ponds installed and maintained with water for only certain times of the year, new non-invasive species of trees will have to be planted and maintained with an open canopy, and then the entire 1,544 acres must be burned at regular intervals.

79.

The radical alteration of the Unit 1 will cause potentially disastrous and long-lasting impacts on the environment of the land, will create smoke and air pollution and will foul water resources in the area and drive away other animals that live on the land.

80.

The FWS did not consider any of these environmental factors in connection with its issuance of the Rule as required by NEPA.

## THE FROG DID NOT OCCUPY UNIT 1 WHEN IT WAS LISTED IN 2001

81.

FWS concludes that the dusky gopher frog was last observed in the State of Louisiana in 1965. 77 Fed. Reg. pp. 35124, 35133 and 35135.

82.

The frog's "range" was the general geographical area in which it was found at the time the listing decision for it was made in 2001.

83.

As Unit 1 was lost historical range at the time of its listing as an "endangered species" in 2001, Unit 1 is not part of the frog's "significant portion of its range."

## FWS FAILED TO PROVE THAT ALL OF UNIT 1 IS REQUIRED FROG HABITAT

84.

In the Rule, FWS decided that all of Unit 1's 1,544 acres are "essential for the conservation of" the frog. 77 Fed. Reg. 35118.

18

85.

Although critical habitat is defined to include only those areas "essential to the conservation of the species," 16 U.S.C. § 1532(5)(A)-(C), FWS neither made any finding as to the quantity or location of habitat necessary to conserve the gopher frog, nor identified "the point" at which the protections of the Act are no longer required. 77 Fed. Reg. 35121.

86.

Under §4 of the ESA, the FWS must designate critical habitat for the frog using the "best scientific data available . . ."  16 U.S.C. §1533(b)(2).

87.

There are no facts in the record for the Rule from which FWS could have drawn a rational connection as to why all of Unit 1 is critical habitat for the frog and FWS has otherwise failed to use the "best scientific data" for its conclusion.

88.

In the Rule, FWS says as follows:

During a review of aerial photography prior to making the final maps of critical habitat for this final rule, we identified an agricultural field within critical habitat Unit 10 as it was described in the revised proposed rule. Because this agricultural area does not contain habitat suitable for the dusky gopher frog, it has been removed from the critical habitat designation.

*See*, 77 Fed. Reg. 35118. (emphasis added.)

89.

The FWS at 77 Fed. Reg. 35135 states as follows:

Unit 1 encompasses 625 ha [sic] (1,544 ac [sic]) on private lands managed for industrial forestry in St. Tammany Parish, Louisiana. This unit is located north and south of State Hwy. 36,approximately 3.1 km (1.9 mi) west of State Hwy. 41

and the town of Hickory, Louisiana. Unit 1 is not within the geographic area occupied by the species at the time of listing. It is currently unoccupied; however, the last observation of a dusky gopher frog in Louisiana was in 1965 in one of the ponds within this unit.

90.

FWS included Unit 1 in the Rule while at the same time excluding from the Rule at least one other "agricultural" area that also does not contain habitat suitable for the frog. 77 Fed. Reg. 35128.

## THE "DUSKY" GOPHER FROG IS NOT AN "ENDANGERED SPECIES" UNDER THE ESA

91.

The ESA requires that critical habitat only be designated for listed "endangered species". ESA, 16 U.S.C. § 1533(b)(2).

92.

The Mississippi gopher frog was declared to be an "endangered species" by the FWS under the ESA, 16 U.S.C. § 1533(b)(2),  in 2001. 66 Fed. Reg. 62993.

93.

In each of its actions and publications prior to publication of the Rule in the Federal Register on June 12, 2012, FWS considered the *Mississippi* gopher frog, **not** the *Dusky* gopher frog.  *See Friends of Mississippi Public Lands and Center for Biological Diversity v. Kempthorne* (07-CV-02073); the court-approved settlement in the CBD Lawsuit; the Proposed Rule (published on September 27, 2011. Fed. Reg., Vol. 76, No. 187, page 59774); and the hearing on  January 31, 2012, on the Proposed Rule.  *See also,* Rule, 77 Fed. Reg. 35119.

94.

 The Rule states:

20

> Subsequent to the listing of the dusky gopher frog (=Mississippi gopher frog), taxonomic research was completed that indicated that the entity (which we listed as a DPS of the dusky gopher frog (Rana capito [sic] sevosa)) is <u>different from</u> other gopher frogs and warrants <u>acceptance as its own species</u> (Young and Crother 2001, pp. 382-388)…[T]he frog warrants acceptance as its own species.

77 Fed. Reg. 35118 (emphasis added).

95.

FWS also stated in the Rule that: "…the [Dusky gopher frog] has now been accepted by the scientific community as a <u>unique species</u>, Rana sevosa." *Id.* (emphasis added).

96.

The "species" under consideration until the Rule was issued in June, 2012 was the Mississippi gopher frog, not the Dusky gopher frog.  *Id.*

97.

The Rule declares that the Poitevent Landowners' land is critical habitat for the Dusky gopher frog, which is a "different species", one that is "unique" and "its own species", and is not the Mississippi gopher frog.  *Id.*

Respectfully submitted,


**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


By:       s/Edward B. Poitevent, II
       EDWARD B. POITEVENT, II (#10564)
       BRIAN M. BALLAY (#29077)
       KATHLYN G. PEREZ (#30668)
       201 St. Charles Avenue, Suite 3600
       New Orleans, Louisiana  70170
       Telephone:  (504) 566-5200
       Facsimile:  (504) 636-4000

**ATTORNEYS FOR P&F LUMBER COMPANY
(2000), L.L.C., ST. TAMMANY LAND CO, L.L.C.
AND PF MONROE PROPERTIES, L.L.C.**


### CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

        s/Edward B. Poitevent, II